**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

TWO-WAY MEDIA LTD,

*Plaintiff,*

v.

DISH NETWORK CORPORATION;
DISH DBS CORPORATION;
DISH NETWORK L.L.C.;
DISH NETWORK SERVICE L.L.C.;
ECHOSTAR CORPORATION;
ECHOSTAR TECHNOLOGIES, L.L.C.;
ECHOSTAR SATELLITE SERVICES, L.L.C.;
SLING MEDIA, INC.;
SLING TV HOLDING L.L.C.;
SLING TV L.L.C.; and
SLING TV PURCHASING L.L.C.,

*Defendants.*

C.A. No. ___________

JURY TRIAL DEMANDED

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Two-Way Media Ltd ("TWM") by its undersigned attorneys, for its complaint against Defendants DISH Network Corporation; DISH DBS Corporation; DISH Network L.L.C.; DISH Network Service L.L.C.; EchoStar Corporation; EchoStar Technologies, L.L.C.; EchoStar Satellite Services, L.L.C.; Sling TV Holding L.L.C.; and Sling TV L.L.C. (collectively, "Defendants"), hereby alleges the following:

**THE PARTIES**

1. Plaintiff TWM is a limited partnership existing under the laws of Colorado with its principal place of business at 2042 Alpine Drive, Boulder, Colorado 80304.

2. Plaintiff TWM is informed and believes, and on that basis alleges, that DISH Network Corporation is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112. DISH Network Corporation is registered to do business in Colorado and can be served with process through its registered agent R. Stanton Dodge located at P.O. Box 6663, Englewood, Colorado 80155, or at Mr. Stanton's place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.

3. Plaintiff TWM is informed and believes, and on that basis alleges, that DISH DBS Corporation is a corporation organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112. DISH DBS Corporation is a wholly owned subsidiary of DISH Network Corporation. DISH DBS Corporation is registered to do business in Colorado and can be served with process through its registered agent R. Stanton Dodge located at P.O. Box 6663, Englewood, Colorado 80155, or at Mr. Stanton's place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.

4. Plaintiff TWM is informed and believes, and on that basis alleges, that DISH Network L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112. DISH Network L.L.C. is a wholly owned subsidiary of DISH Network Corporation. DISH Network L.L.C. is registered to do business in Colorado and may be served through its registered agent R. Stanton Dodge located at P.O. Box 6663, Englewood, Colorado 80155, or at Mr. Stanton's place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.

5. Plaintiff TWM is informed and believes, and on that basis alleges, that DISH Network Service L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112. DISH Network Service L.L.C. is a wholly owned subsidiary of DISH Network

Corporation. DISH Network Service L.L.C. is registered to do business in Colorado and may be served through its registered agent R. Stanton Dodge located at P.O. Box 6663, Englewood, Colorado 80155, or at Mr. Stanton's place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.

6. Plaintiff TWM is informed and believes, and on that basis alleges, that EchoStar Corporation is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business at 100 Inverness Terrace East, Englewood, Colorado 80112. EchoStar Corporation is registered to do business in Colorado and may be served through its registered agent Corporation Service Company at 1560 Broadway, Suite 2090, Denver, Colorado 80202.

7. Plaintiff TWM is informed and believes, and on that basis alleges, that EchoStar Technologies, L.L.C. is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business at 100 Inverness Terrace East, Englewood, Colorado 80112. EchoStar Technologies, L.L.C. is a wholly owned subsidiary of EchoStar Corporation. EchoStar Technologies, L.L.C. is registered to do business in Colorado and may be served through its registered agent Corporation Service Company at 1560 Broadway, Suite 2090, Denver, Colorado 80202.

8. Plaintiff TWM is informed and believes, and on that basis alleges, that EchoStar Satellite Services, L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 100 Inverness Terrace East, Englewood, Colorado 80112. EchoStar Satellite Services, L.L.C. is a wholly owned subsidiary of EchoStar Corporation. EchoStar Satellite Services, L.L.C. is registered to do business in Colorado and may be served through its registered agent Corporation Service Company at 1560 Broadway, Suite 2090, Denver, Colorado 80202.

9. Plaintiff TWM is informed and believes, and on that basis alleges, that Sling Media, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal

place of business at 1051 East Hillsdale Blvd, Suite 500, Foster City, California 94404. Sling Media, Inc. is a subsidiary of EchoStar Corporation. Sling Media Inc. may be served through its registered agent Corporation Service Company located at 2711 Centerville Road Suite 400, Wilmington, Delaware 19808.

10. Plaintiff TWM is informed and believes, and on that basis alleges, that Sling TV Holding L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80122. Sling TV Holding L.L.C. is registered to do business in Colorado and may be served through its registered agent R. Stanton Dodge located at P.O. Box 6663, Englewood, Colorado 80155, or at Mr. Stanton's place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.

11. Plaintiff TWM is informed and believes, and on that basis alleges, that Sling TV L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80122. Sling TV L.L.C. is a subsidiary of Sling TV Holding L.L.C. Sling TV L.L.C. is registered to do business in Colorado and may be served through its registered agent R. Stanton Dodge located at P.O. Box 6663, Englewood, Colorado 80155, or at Mr. Stanton's place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.

12. Plaintiff TWM is informed and believes, and on that basis alleges, that Sling TV Purchasing L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112. Sling TV Purchasing L.L.C. is registered to do business in Colorado and may be served through its registered agent R. Stanton Dodge located at P.O. Box 6663, Englewood, Colorado 80155, or at Mr. Stanton's place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*.

14. This Court has personal jurisdiction over Defendants because: (1) each Defendant purposefully availed itself of the privilege of conducting activities within the State of Colorado; (2) the nature, quality, and quantity of Defendants' contacts with Colorado subject Defendants to personal jurisdiction of this Court; and (3) TWM's claims arise from Defendants' transactions of business in this judicial district.

15. Defendants have conducted and do conduct business within the State of Colorado. Defendants, directly or through intermediaries (including distributors, retailers, and others), ship, distribute, sell, offer for sale, and advertise products and services that infringe one or more claims of the asserted patents in the United States, the State of Colorado, and the District of Colorado. Defendants have purposefully and voluntarily placed one or more of their infringing products into the stream of commerce with the expectation that it will be purchased by consumers in the United States, the State of Colorado, and the District of Colorado. The infringing products have been and continue to be purchased by consumers in the District of Colorado. Defendants have committed acts of patent infringement within the United States, the State of Colorado, and the District of Colorado.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b). Furthermore, venue is proper because Defendants conduct business within this District and/or solicit and establish relationships with entities within this District, which include the selling and/or offering for sale of products and services as discussed below. Each act of Defendants' infringing conduct in this District gives rise to proper venue.

17. Defendants DISH DBS Corporation, DISH Network L.L.C., DISH Network Service L.L.C., EchoStar Satellite Services, L.L.C., Sling TV Holding L.L.C., Sling TV L.L.C. and Sling TV Purchasing L.L.C. are all incorporated in Colorado.

18. Plaintiff TWM is incorporated in Colorado.

## ASSERTED PATENTS

19. On July 7, 1998, United States Patent No. 5,778,187 (the "'187 patent") was duly and legally issued for an invention entitled "Multicasting Method and Apparatus" to inventors James Butterworth and Antonio Monteiro. Reexamination Certificates for the '187 patent issued on June 27, 2006, and April 21, 2009. A true and correct copy of the '187 patent is attached as Exhibit 1.

20. On November 9, 1999, United States Patent No. 5,983,005 (the "'005 patent") was duly and legally issued for an invention entitled "Multicasting Method and Apparatus." Reexamination Certificates for the '005 patent issued on June 13, 2006, and January 13, 2009. A true and correct copy of the '005 patent is attached as Exhibit 2.

21. On August 13, 2002, United States Patent No. 6,434,622 (the "'622 patent") was duly and legally issued for an invention entitled "Multicasting Method and Apparatus." Reexamination Certificates for the '622 patent issued on September 12, 2006, and December 2, 2008. A true and correct copy of the '622 patent is attached as Exhibit 3.

22. On September 4, 2007, United States Patent No. 7,266,686 (the "'686 patent") was duly and legally issued for an invention entitled "Multicasting Method and Apparatus." A true and correct copy of the '686 patent is attached as Exhibit 4.

23. On September 1, 2015, United States Patent No. 9,124,607 (the "'607 patent") was duly and legally issued for an invention entitled "Methods and Systems for Playing Media." A true and correct copy of the '607 patent is attached as Exhibit 5.

24. The ’187 patent, the ’005 patent, the ’622 patent, the ’686 patent, and the ’607 patent (collectively, the “TWM Patents”) issued from a series of applications claiming priority to May 9, 1996.

25. TWM was assigned the TWM Patents and continues to hold all rights and interest in the patents.

26. Defendants make, use, sell, market, provide, and support products and services for live streaming media, that, for example, infringe the TWM Patents.

27. To redress Defendants’ infringement of the TWM Patents, TWM seeks actual damages and a permanent injunction to enjoin all infringement by Defendants. Absent a permanent injunction, TWM faces real, substantial, and irreparable damage and injury of a continuing nature from Defendants’ infringement, for which TWM has no adequate remedy at law.

## FACTUAL BACKGROUND

### The Rise of OTT Services

28. The delivery of television programming has changed dramatically in the past decade. In particular, it has expanded to include distributing TV programming to devices other than televisions (such as personal computers, tablets and smartphones). In 2008, a study by Parks Associates estimated that nearly 1 million U.S. households relied entirely on the Internet for television viewing. Services such as iTunes, YouTube, Hulu and Netflix grew rapidly to include millions of subscribers. To distribute their programming, such services did not have to build the delivery infrastructure of a traditional pay TV provider, such as a cable or satellite TV company (known as a multichannel video programming distributor, or “MVPD”). Instead, these services streamed “over-the-top” (“OTT”) of the public Internet directly to their subscribers.

29. By 2010, U.S. MVPDs started to see the effects of competition from OTT services as subscribers began to defect. Former subscribers (known as “cord cutters”), subscribers that downgraded their service (“cord shavers”), and a new generation of potential subscribers that had

never been an MVPD customer ("cord nevers") instead relied on OTT streaming services for their video programming. A Nielsen Media Research report showed that in 2011 MVPDs lost 1.5 million customers, and a Deloitte report said that during 2011 9% of households had cut back their cable services, while another 11% had plans to do so. On the other hand, a recent report from Jupiter Research found that OTT services will grow form 92.1 million global subscribers in 2014 to 333.2 million in 2019.

30. In response, MVPDs in 2009 began offering their own OTT and other streaming services to their subscribers (known as "TV Everywhere"). These services allow subscribers to stream their cable or satellite TV content (both video-on-demand and live TV) via the Internet to applications (or "apps") on computers, tablets, smart phones, smart TVs, set-top boxes, gaming consoles and other platforms. These MVPD services, however, were available just to current subscribers and required an associated cable or satellite TV subscription. By 2010, many MVPDs and television programmers (*e.g.*, NBCU, HBO, ESPN) had rolled out these OTT services to their subscribers.

31. In 2012, OTT services started to appear featuring more traditional pay TV content (*e.g.*, live TV) yet not requiring an MVPD subscription. By 2015, many of the MVPDs themselves had either released or were in the early stages of releasing "stand alone" OTT services that did not require an associated traditional cable or satellite TV service.

32. By 2015, these MVPD apps had been downloaded more than 50 million times. A survey of U.S. pay TV households published in the first quarter of 2014 indicated that 21% of U.S. pay TV households accessed TV Everywhere content across devices and web browsers, and TV Everywhere video consumption grew 246% year-over-year. And by 2015, many MVPDs had reversed subscriber defections and, in some cases, had started to grow their subscriber numbers again.

**<u>Two-Way Media and the Patents-in-Suit</u>**

33. TWM's predecessor in interest, Netcast Communications Corp. ("Netcast"), was a pioneer of technology used for streaming of live (also known as "linear" or "real-time") audio and video over the Internet. Live streaming allows users to receive audio and/or video information over the Internet at approximately the same time as that information is being transmitted, and without having to wait for the entire information to download. In 1995, Netcast founder and TWM managing partner James Butterworth, along with Netcast chief technical officer Antonio Monteiro, invented an interactive, distributed client-server architecture that allows live audio and/or video streams to be sent to a large number of users in a reliable and efficient manner, while enabling commercial recordkeeping and marketing functions such as gathering usage statistics, dynamically inserting advertising content into streams, and offering targeted product sales, such as buying music or concert tickets that relate to a song to which a user is listening.

34. Today, TWM owns more than fifty patents on audio and visual streaming technology based on the Netcast system. All of these patents claim priority to an original application filed May 9, 1996, entitled "Multicasting Method and Apparatus," that issued as the '187 patent. In addition to other TWM patents, continuations of the original application issued as the '005 patent on July 7, 1998, the '622 patent on August 13, 2002, the '686 patent on September 4, 2007, and the '607 patent on September 1, 2015.

35. In 2002, Netcast conveyed the '187 patent and all continuations (including the '005, '622, and '686 patents) to Netcast Innovations Ltd., which later that year changed its name to Two-Way Media LLC. In 2011, Two-Way Media LLC converted to a limited partnership and changed its name to Two-Way Media Ltd.

36. The shared specification in the TWM Patents describes a system for transmitting, receiving, and monitoring audio and video streams over the Internet. Before a user can receive audio or video over the Internet, analog transmission signals of audio or video must first be converted to digital signals. This is because computers can process only data or signals that are digital (*i.e.*, data

that have been converted to a format consisting of zeroes and ones). In the TWM system, incoming analog and digital audio and/or video signals are received by a central facility, which converts the analog signals to digital signals that computers can understand. This central facility then sends or forwards digitized audio and/or video signals to various computers, or servers, which then transmit the signals to users across the Internet or similar communications networks. The transmissions are monitored to ensure the reliability and accuracy of gathered usage statistics. The servers may also play a role in ensuring that each user receives the particular stream of the user's choosing and that the user receives the signals at substantially the same time that the signals are transmitted from the central facility.

37. The streams sent from the central facility may pass through selected intermediate computers/servers on their route to the user. The intermediate computers/servers direct the stream received from the central facility to the users who have requested that stream. An example of an embodiment of the TWM system from Figure 1 of the TWM Patents is shown below. As can be seen, the Media Servers 30 direct the content stream received from the Primary Servers 20 to the Users 40. The precise number and location of the intermediate servers can vary based on a variety of factors, such as population, number of subscribers, and level of network congestion. Among other benefits, using intermediate servers introduces scalability into the network, allowing the network to service greater numbers of users as demand increases.




38. In an example embodiment, while the user is receiving the selected content, one or more of the servers may monitor a user's reception of the selected stream and capture usage information. The information captured may indicate, for example, the identity (or a proxy for the identity) of the user, the identity of the specific stream that the user requested, how long the user received that stream, the times at which the user received the stream, and the content of the stream. Additionally, server computers, whether at the central facility or at the intermediate servers, may insert advertising or programming targeted to users into the streams that are sent to users. The content of the advertising and programming may be varied based on the identity of the user such that the advertising or programming may be targeted to different demographics or geography.

**<u>Defendants' Offerings</u>**

39. Defendants offer products and services that live stream content via the Internet. These products include at least Slingbox and select DISH digital video recording (DVR) set-top boxes with

Sling Technology (*e.g.*, Hopper 3, Hopper with Sling, 922 Slingloaded DVR, Hopper, 722, 722k DVR with the Sling Adapter), and services include at least Sling TV, Sling International, DISH Anywhere, and DishWorld (collectively, "Accused Products and Services"). For example, subscribers to Sling TV and Sling International can live stream content to their computers, portable devices, and streaming devices using Defendants' Sling TV and Sling International apps (*e.g.*, apps available for Amazon FireTV, Roku, Chromecast, nexus player, ZTE, Amazon Fire, RCA, Xbox One, iOS, OS X, Windows, and Android). Likewise, a user can live stream channels using the DISH Anywhere service by (1) streaming directly to a browser via the web; or (2) streaming to a client application from a DISH DVR device. Similarly, users can live stream channels from the Slingbox product to a mobile device with the SlingPlayer app or to a computer via the "Watch on Slingbox.com" feature. These live streams the Accused Products and Services provide can be viewed on workstations and laptops (using standard web browsers on popular operating systems like Windows, OS X, and Linux), and on tablets, smartphones, and other devices that use, for example, the Apple iOS operating system (*e.g.*, on the iPhone, iPad, and other Apple devices) and the Android operating system (*e.g.*, on Android-based smartphones and tablets). These tablets, smartphones, and other devices run apps that enable the live streaming.

40. On information and belief, the servers and clients Defendants use for streaming media generate detailed records and usage statistics about the Accused Products and Services. For example, Sling TV apps send messages to "stats.movenetworks.com," which Defendants own, regarding the delivery of streams to the app.

41. Defendants also contract and have relationships with third parties, such as Adobe Systems Incorporated and comScore, Inc. to gather, store, and process usage statistics related to the Accused Products and Services. On information and belief, these contracts establish a principal-agent relationship between the Defendants and the third parties and obligate the third parties to perform some of the method steps of the TWM Patents. For example, the 2012 privacy policies for

"Adobe Products and Services" generally and for Adobe's SiteCatalyst service specifically state that Adobe acts "as an agent" that collects and processes data on behalf of its corporate clients. The policies further maintain that the corporate clients, who at all times remain the owners of the data, determine the purposes and means of data intake and processing. Adobe's "Analytics and on-site personalization services" privacy policy states further that "Adobe does not use the information we collect for a company except as may be allowed in a contract with that company." True and correct copies of these privacy policies, which are freely available on the Internet, are attached as Exhibits 6–9. Additional key quotations from those documents include:

- Defendants "tell[] Adobe what type of information it would like [Adobe] to collect."
- "All such information is and will remain customer property. . . . Adobe will not review, share, disclose, distribute, print, or reference any such information except as permitted, requested, or directed by the customer or as may be required by law."
- "[W]e collect and retain the personally identifiable information only on our customers' behalf, acting as our customers' agent . . . ."
- "Adobe does not use the information we collect . . . except as may be allowed in a contract with that company."
- "We and/or our Subsidiaries act as an agent (and data processor in the EU context) to each of our corporate customers . . ."
- "Adobe acts as an agent to its Customers for the purpose of providing Internet data hosting and optimization products and services. Any information obtained by Adobe from the customer's websites is and will remain customer property."
- "It is important that you review the respective privacy policy of each website that you visit, because such privacy policies govern the use of information collected on those websites, including our customer's use of Adobe products and services where applicable."

42. Defendants' software apps running on the user devices generate these usage statistics and transmit them to Defendants servers and/or the third parties. Upon information and belief, Defendants direct or control the gathering of usage statistics with the assistance of the third parties, who are contractually obligated to carry out components of the data collection. For example, Defendants provide software, in the form of apps, to their subscribers. Defendants then specify what type of information they would like the third party to collect. These specific types of statistics include data related to the delivery of the streaming media, such as the commencement time, termination time, duration, and status of the stream. When Defendants' Accused Products and Services are used, these apps generate statistics that are transmitted to the third parties, who gather them. Pursuant to the contractual relationships between the Defendants and third parties, the third parties are obligated to receive and accumulate the statistics on behalf of Defendants. Upon information and belief, Defendants at all times retain the right to alter the data collected, the manner of collection, the manner of receipt and storage, and output resulting from the data collection. Accordingly, upon information and belief, the relationship between Defendants, on the one hand, and these third parties, on the other hand, goes beyond mere arms-length cooperation.

43. Defendants currently make available for live streaming via Sling TV at least the following live programming streams: Adult Swim; AMC; BabyTV; beIN Sports; Bloomberg Television; Boomerang; Cartoon Network; CNN; Cooking Channel; Disney Channel; Disney Junior; Disney XD; DIY; ducktv; El Rey; EPIX; EPIX 2; EPIX Drive-In; EPIX Hits; ESPN; ESPN2; ESPN Bases Loaded; ESPN Buzz Beater; ESPN Deportes; ESPN Goal Line; ESPNews; ESPNU; euronews; Food Network; France 24; Freeform (formerly ABC Family); Fusion; Galavision; HGTV; HLN; IFC; Maker; NDTV 24x7; News18 India; Polaris+; RT Network; SEC Network; SundanceTV; TBS; TNT; Travel Channel; truTV; Turner Classic Movies; Univision Deportes; and WE tv.

44. Defendants currently make available for live streaming via Sling International and/or DishWorld more than 300 programming streams, including at least the following: 9X Tashan; Aaj

Tak; Aapka Colors; Aastha TV; Adithya; Aghapy TV; AksyonTV; Al Arabiya; Al Hayah 1; Al Jazeera; Al Jazeera Mubasher; Al Nahar; Al Yawm; Anhui Television; Arabica; ART Aflam 1; ART Aflam 2; ART America; ART Cima; ART Cinema; Art Hekayat 1; ART Hekayat 2; ART Movies; ART Tarab; ARY Digital; ARY News; ARY Zauq; Asianet; Asianet Movies; Asianet News; Asianet Plus; ATN Bangla; ATV Home Channel; B4U Movies; B4U Music; BabyTV; BAND News; BBC Arabic; beIN Sports; beIN Sports en Espanol; Beijing TV; Bhakti; BIG Magic International; Bloomberg Television; Blue Ocean; Boomerang; CCTV-4; CCTV-E; CCTV-Entertainment; CCTV-News; CCTV-Opera; Channel i; Channel V; China Movie Channel; ChongQing Television; Colors Bangla; CTS America; CYRTV; Dragon TV; Dream 2; ducktv; Dunya TV; Ebru TV; ESC-1; ET China; ET Drama; ET Financial News; ET Global; ET News; ETV Telugu; Eurochannel; euronews; Express Entertainment; Express News; FashionTV; Food Food; Formosa TV; France 24; Fujian Straits TV; Future Television; Gemini Comedy; Gemini Movies; Gemini TV; Geo News; Geo TV; GETV; Global Punjab; Guangdong Southern TV; Halla Bol!; Hunan Satellite TV; Ikk Onkar; IQRAA TV; Jaya Max; Jaya TV; JET TV International; Jiangsu International Channel; JMovies; Jus 24x7 Comedy; Jus Punjabi; Kairali TV; Kairali We; Kalaignar; Kapatid TV5; Kiran TV; KTV; LBC; LDC America; Life OK; LUXE.TV; Maa Gold; Maa Movies; Maa Music; Maa TV; Mazhavil Manorama; MBC; MBC 3; MBC Drama; MBC Masr; Melody Aflam; Melody Classic; Melody Hits; MH1; Movies OK; MTV India; Murr TV; NBN; NDTV 24x7; NDTV Good Times; New TV; News18 India; NourSat TV; NOW BNC; NOW Hairun; NOW TV; NTV Bangla; NTV Telugu; One World Sports; ONTV; OSN Ya Hala International; OTV; Pacvia TV; People; PFC; Phoenix InfoNews; Phoenix North America Chinese Channel; PTC Punjabi; PTV; QTV; Raj Digital Plus; Raj Music; Raj News; Raj TV; Rishtey; RIT TV; RT Network; SAB TV; Sahara One; Sahara Samay; SET Asia; SET Max; SETI; ShenZhen Television; Sirippoli; Skylink Television; Skylink Television 2; Sony Mix; Star Chinese Channel; Star India Plus; SUN Music; SUN TV; Surya TV; SVBC; TEN Egypt; Times Now; TRACE Sports Stars; Trace Urban; TTV; TV9 Gujarati; TV9 Telugu; TV Asia;

TVB1; TVB2; TVBe; TVBS; TVBV; TV Globo Internacional; TV Record Americas; UBN; Vanitha; Vijay International; Willow; Xiamen TV; Yoyo TV; Zee Telugu; Zee TV HD; Zhejiang TV; and zoOm.

45. The programming streams that Defendants make available for live streaming via DISH Anywhere varies with user subscriptions.

**Infringement of U.S. Patent No. 5,778,187**

46. TWM incorporates and re-alleges paragraphs 1 through 45 as if fully set forth herein.

47. Defendants have been and still are infringing at least claim 1 of the '187 patent, literally or under the doctrine of equivalents, by, for example, live streaming via Sling TV, Sling International, and/or DishWorld one or more of the channels identified in paragraphs 43 and 44 above through apps running on one or more of the platforms and devices identified in paragraph 39 above.

48. Defendants have been and still are jointly infringing one or more claims of the '187 patent by, for example, contracting out for services related to the gathering of usage statistics and recordkeeping to third parties. As set forth in paragraphs 41 and 42, upon information and belief, Defendants exercise direction or control over these activities of gathering usage statistics and recordkeeping. Additionally, Defendants in combination with one or more of these third parties perform each and every step of one or more claims of the '187 patent.

49. This constitutes direct infringement under 35 U.S.C. § 271(a) because Defendants are making, using, offering for sale and selling, or controlling and directing the making, using offering for sale and selling of, the methods and systems claimed in the '187 patent.

50. As a direct and proximate result of Defendants' acts of infringement, TWM has been, is being, and will be damaged. Defendants' continued infringement of TWM's exclusive rights under

the '187 patent will continue to damage TWM, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

51. TWM also is entitled to recover from Defendants the damages sustained by TWM as a result of Defendants' wrongful acts in an amount subject to proof at trial.

52. TWM intends to seek discovery on the issue of willfulness and seeks a willfulness finding relative to pre-suit infringement and/or post-suit infringement of the '187 patent based, in part, on the facts set forth in paragraph 53 below.

53. DISH Network Corporation, DISH DBS Corporation, DISH Network L.L.C., DISH Network Service L.L.C. (collectively, the "DISH Defendants") and Sling TV Holding L.L.C., Sling TV L.L.C., and Sling TV Purchasing L.L.C. (collectively, the "Sling TV Defendants") have had knowledge of the '187 patent since at least as early as July 15, 2013, on which date TWM provided at least the DISH Defendants and the Sling TV Defendants with a listing of TWM's patents, including the '187 patent, during communications with them about TWM's patent portfolio.

**Infringement of U.S. Patent No. 5,983,005**

54. TWM incorporates and re-alleges paragraphs 1 through 53 as if fully set forth herein.

55. Defendants have been and still are infringing at least claim 1 of the '005 patent, literally or under the doctrine of equivalents, by, for example, live streaming via Sling TV, Sling International, and/or DishWorld one or more of the channels identified in paragraphs 43 and 44 above through apps running on one or more of the platforms and devices identified in paragraph 39 above.

56. Defendants have been and still are jointly infringing one or more claims of the '005 patent by, for example, contracting out for services related to the gathering of usage statistics and recordkeeping to third parties. As set forth in paragraphs 41 and 42, upon information and belief, Defendants exercise direction or control over these activities of gathering usage statistics and

recordkeeping. Additionally, Defendants in combination with one or more of these third parties perform each and every step of one or more claims of the '005 patent.

57. This constitutes direct infringement under 35 U.S.C. § 271(a) because Defendants are making, using, offering for sale and selling, or controlling and directing the making, using offering for sale and selling of, the methods and systems claimed in the '005 patent.

58. As a direct and proximate result of Defendants' acts of infringement, TWM has been, is being, and will be damaged. Defendants' continued infringement of TWM's exclusive rights under the '005 patent will continue to damage TWM, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

59. TWM also is entitled to recover from Defendants the damages sustained by TWM as a result of Defendants' wrongful acts in an amount subject to proof at trial.

60. TWM intends to seek discovery on the issue of willfulness and seeks a willfulness finding relative to pre-suit infringement and/or post-suit infringement of the '005 patent based, in part, on the facts set forth in paragraph 61 below.

61. DISH Defendants and Sling TV Defendants have had knowledge of the '005 patent since at least as early as July 15, 2013, on which date TWM provided at least the DISH Defendants and the Sling TV Defendants with a listing of TWM's patents, including the '005 patent, during communications with them about TWM's patent portfolio.

## Infringement of U.S. Patent No. 6,434,622

62. TWM incorporates and re-alleges paragraphs 1 through 61 as if fully set forth herein.

63. Defendants have been and still are infringing at least claims 1 and 29 of the '622 patent, literally or under the doctrine of equivalents, by, for example, live streaming via Sling TV, Sling International, DishWorld, DISH Anywhere, DISH DVRs with Sling Technology, and/or Slingboxes

one or more of the channels identified in paragraphs 43 and 44 above through apps running on one or more of the platforms and devices identified in paragraph 39 above.

64. Defendants have been and still are jointly infringing one or more claims of the '622 patent by, for example, contracting out for services related to the gathering of usage statistics and recordkeeping to third parties. As set forth in paragraphs 41 and 42, upon information and belief, Defendants exercise direction or control over these activities of gathering usage statistics and recordkeeping. Additionally, Defendants in combination with one or more of these third parties perform each and every step of one or more claims of the '622 patent.

65. This constitutes direct infringement under 35 U.S.C. § 271(a) because Defendants are making, using, offering for sale and selling, or controlling and directing the making, using offering for sale and selling of, the methods and systems claimed in the '622 patent.

66. As a direct and proximate result of Defendants' acts of infringement, TWM has been, is being, and will be damaged. Defendants' continued infringement of TWM's exclusive rights under the '622 patent will continue to damage TWM, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

67. TWM also is entitled to recover from Defendants the damages sustained by TWM as a result of Defendants' wrongful acts in an amount subject to proof at trial.

68. TWM intends to seek discovery on the issue of willfulness and seeks a willfulness finding relative to pre-suit infringement and/or post-suit infringement of the '622 patent based, in part, on the facts set forth in paragraph 69 below.

69. DISH Defendants and Sling TV Defendants have had knowledge of the '622 patent since at least as early as July 15, 2013, on which date TWM provided at least the DISH Defendants and the Sling TV Defendants with a listing of TWM's patents, including the '622 patent, during communications with them about TWM's patent portfolio.

**<u>Infringement of U.S. Patent No. 7,266,686</u>**

70. TWM incorporates and re-alleges paragraphs 1 through 69 as if fully set forth herein.

71. Defendants have been and still are infringing at least claim 1 of the ’686 patent, literally or under the doctrine of equivalents, by, for example, live streaming via Sling TV, Sling International, DishWorld, and/or DISH Anywhere one or more of the channels identified in paragraphs 43 and 44 above through apps running on one or more of the platforms and devices identified in paragraph 39 above.

72. Defendants have been and still are jointly infringing one or more claims of the ’686 patent by, for example, contracting out for services related to the gathering of usage statistics and recordkeeping to third parties. As set forth in paragraphs 41 and 42, upon information and belief, Defendants exercise direction or control over these activities of gathering usage statistics and recordkeeping. Additionally, Defendants in combination with one or more of these third parties perform each and every step of one or more claims of the ’686 patent.

73. This constitutes direct infringement under 35 U.S.C. § 271(a) because Defendants are making, using, offering for sale and selling, or controlling and directing the making, using offering for sale and selling of, the methods and systems claimed in the ’686 patent.

74. As a direct and proximate result of Defendants’ acts of infringement, TWM has been, is being, and will be damaged. Defendants’ continued infringement of TWM’s exclusive rights under the ’686 patent will continue to damage TWM, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

75. TWM also is entitled to recover from Defendants the damages sustained by TWM as a result of Defendants’ wrongful acts in an amount subject to proof at trial.

76. At least as early as its receipt of this Complaint, Defendants have had knowledge of the ’686 patent and written notice of its infringement.

**Infringement of U.S. Patent No. 9,124,607**

77. TWM incorporates and re-alleges paragraphs 1 through 76 as if fully set forth herein.

78. Defendants have been and still are infringing at least claim 1 of the '607 patent, literally or under the doctrine of equivalents, by, for example, live streaming via Sling TV, Sling International, and/or DishWorld one or more of the channels identified in paragraphs 43 and 44 above through apps running on one or more of the platforms and devices identified in paragraph 39 above.

79. Defendants have been and still are jointly infringing one or more claims of the '607 patent by, for example, contracting out for services related to the gathering of usage statistics and recordkeeping to third parties. As set forth in paragraphs 41 and 42, upon information and belief, Defendants exercise direction or control over these activities of gathering usage statistics and recordkeeping. Additionally, Defendants in combination with one or more of these third parties perform each and every step of one or more claims of the '607 patent.

80. This constitutes direct infringement under 35 U.S.C. § 271(a) because Defendants are making, using, offering for sale and selling, or controlling and directing the making, using offering for sale and selling of, the methods and systems claimed in the '607 patent.

81. As a direct and proximate result of Defendants' acts of infringement, TWM has been, is being, and will be damaged. Defendants' continued infringement of TWM's exclusive rights under the '607 patent will continue to damage TWM, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

82. TWM also is entitled to recover from Defendants the damages sustained by TWM as a result of Defendants' wrongful acts in an amount subject to proof at trial.

83. At least as early as its receipt of this Complaint, Defendants have had knowledge of the '607 patent and written notice of its infringement.

## PRAYER FOR RELIEF

84. TWM respectfully requests entry of judgment in its favor and against Defendants as follows:

a. Declaring that Defendants have infringed and continue to infringe the ’187 patent, the ’005 patent, the ’622 patent, and the ’686 patent;

b. Declaring that the asserted patents are valid and enforceable;

c. Awarding damages as warranted under 35 U.S.C. § 284 arising out of Defendants’ infringement of the ’187 patent, the ’005 patent, the ’622 patent, the ’686 patent, and the ’607 patent, together with prejudgment and post-judgment interest, costs, and disbursements, in an amount according to proof;

d. Awarding enhanced damages pursuant to 35 U.S.C. § 284;

e. Permanently enjoining Defendants and its officers, agents, employees, and those acting in privity with them, from further infringement of the ’187 patent, the ’005 patent, the ’622 patent, the ’686 patent, and the ’607 patent;

f. Requiring Defendants to file with this Court, within thirty (30) days after the entry of final judgment, a written statement under oath setting forth in detail the manner in which they have complied with the injunctions;

g. Requiring Defendants to file with this Court an accounting for infringing acts not presented at trial and an award by the Court of additional damages for such acts;

h. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to TWM its reasonable attorneys’ fees; and

i. Such other and further relief in law or in equity to which TWM may be justly entitled.

## DEMAND FOR JURY TRIAL

85. TWM respectfully requests a trial by jury on all issues so triable.

Dated: February 17, 2016

Respectfully submitted,

*/s/ Parker C. Folse, III*

Parker C. Folse, III
Rachel S. Black
Brooke A.M. Taylor
Jenna G. Farleigh
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
pfolse@susmangodfrey.com
rblack@susmangodfrey.com
btaylor@susmangodfrey.com
jfarleigh@susmangodfrey.com

Michael F. Heim
Leslie V. Payne
Micah J. Howe
R. Allan Bullwinkel
HEIM, PAYNE & CHORUSH L.L.P.
600 Travis Street, Suite 6710
Houston, TX 77002-2912
Telephone: (713) 221-2000
Facsimile: (713) 221-2021
mheim@hpcllp.com
lpayne@hpcllp.com
mhowe@hpcllp.com
abullwinkel@hpcllp.com

**ATTORNEYS FOR TWO-WAY MEDIA LTD**